## MONROE *v.* BUSHNELL.

1. FRAUD—EVIDENCE—RELIANCE ON STATEMENTS.

   Under a bill of complaint charging defendant with obtaining money for a corporation of which he was manager by fraudulent representations, evidence that the representations were made subsequent to the time of securing the loan, fails to sustain the charge of fraud.

2. CONTRACTS—ACTIONS—CORPORATIONS.

   No right of action against the manager of a corporation accrues to the trustee in bankruptcy of a bank which loaned money in the name of its president to the corporation acting through its manager, appointed under a special agreement whereby the manager assumed control of the business, and which provided for a mutual cancellation of liability arising out of certain provisions of the contract, if the business did not succeed.

3. SAME—PARTIES TO ACTIONS—ASSIGNMENT—BANKRUPTCY—SUBROGATION.

   An assignment of the rights of the corporation to the trustee in bankruptcy gives no greater rights than the trustee would have had against a defendant who did not bear to the complainant the relation of debtor and creditor, or a relation which equity would treat as its equivalent.

Appeal from Kalamazoo; Adams, J. Submitted February 18, 1909. (Docket No. 124.) Decided September 21, 1909.

Bill by Stephen B. Monroe, trustee in bankruptcy of the Vicksburg Exchange Bank, and others, against William E. Bushnell and the Vicksburg Manufacturing Company to establish a lien for moneys furnished to defendants. From a decree for complainant, defendant Bushnell appeals. Reversed, and bill dismissed.

*Jesse R. Cropsey* and *Boudeman, Adams & Weston,* for complainant.

*Jackson & Fitzgerald* (*W. J. Candlish,* of counsel), for appellant.

McALVAY, J. Complainant in this case, as trustee in bankruptcy of the Vicksburg Exchange Bank, a copartnership, and Charles L. Keep, Fred W. Neasmith, Eva A. Neasmith, and Ella Cooley, as members of said copartnership, and individually bankrupts, filed his bill of complaint against defendant Bushnell and the Vicksburg Manufacturing Company asking for:

(1) An accounting with defendant Bushnell for the sum of $4,100 in cash furnished under a certain contract.

(2) An accounting for all sums for which defendant Bushnell would be liable to account to the Vicksburg Manufacturing Company for rents and profits arising out of the operation of its business from March 4, 1904.

(3) For a lien to be decreed upon all property and machinery defendant Bushnell may have in and about the plant of the Vicksburg Manufacturing Company purchased from moneys advanced to him and from income, gains, and profits arising from the operation of its business, also all bills receivable and book accounts arising from sales of any manufactured goods, and all moneys received upon such sales, and also for an injunction against said Bushnell to restrain him from selling, assigning, incumbering, or removing any of the tools, machinery, stock or goods, property, and accounts of said Vicksburg Manufacturing Company.

Elbert L. Page, who was a member of the copartnership doing the banking business, was never individually declared a bankrupt. The trustee complainant claims to represent any rights of said Page and also any rights of the Vicksburg Manufacturing Company against defendant Bushnell solely through certain assignments by such parties to him as trustee in bankruptcy of the banking copartnership. The Vicksburg Manufacturing Company is the name of a domestic corporation formerly known as "Clark Bros. Company," which under the statute has been changed.

The theory upon which the bill of complaint is framed, and under which the relief prayed is claimed, is: That, under a certain contract between Clark Bros. Company and defendant Bushnell, dated March 4, 1904, as complain-

ant construes it, defendant Bushnell was to take charge of Clark Bros.' plant and run it for himself; that moneys should be advanced to him as a working capital to the amount of $3,000, which he would repay, according to the terms of said contract, which will be set forth later in this opinion. It is further claimed: That Clark Bros. Company were then indebted to the Vicksburg Bank to the amount of $5,500, secured and unsecured, and that to be able to advance money to Bushnell to carry on his business the stockholders of Clark Bros. Company entered into an agreement with Page, as president of the bank, to pay certain assessments upon their stock, to the amount of $2,500, to reduce said indebtedness; that these assessments were in a large part paid; that then Mr. Page furnished defendant Bushnell money to the amount of $4,100 in the following manner: Page gave his promissory notes from time to time to the banking firm, and, although he was insolvent, received money for them which he gave to Bushnell as it was needed in the business, taking receipts therefor. The bill of complaint alleges: That the Vicksburg Bank closed its doors in June, 1905, and the firm was adjudged bankrupt September 4, 1905; that this trustee found that Mr. Page was indebted to said banking firm in a sum of over $12,000, and the trustee secured a judgment against him in the circuit court for Kalamazoo county for over $10,000, which judgment included the notes of Page, for the moneys claimed to have been advanced by him to Bushnell; and that the judgment is not collectible. The bill then sets up at length the dealings between the Vicksburg Manufacturing Company under the contract with it, in the name of Clark Bros. Company and defendant Bushnell, claiming that out of these transactions there arose a large indebtedness, on account of rents and profits of the business, due from him to said company as its agent, and on account of the fact that the bank actually furnished the money to Bushnell through Page, and Page is now insolvent, complainant trustee should be subrogated to his rights against Bushnell for the money ad-

vanced, and also to a lien on the machinery, property, and manufactured goods so far as purchased with such money and so far as the same represents gains and profits. There are other allegations of threats by Bushnell to remove this property, or some of it, upon which the prayer for injunction is based. The Vicksburg Manufacturing Company was made a party defendant by amendment to the bill, on the order of the court, at the hearing. Its answer is an admission of all the material allegations of the bill, and its officers furnish the major part of complainant's oral proofs.

Defendant Bushnell, traversing and denying the allegations of the bill upon which recovery can be predicated, claimed: That by the terms of the contract with Clark Bros. Company no money was agreed to be advanced to him personally, or that he was personally liable to pay the same, but that he was to take charge of and manage the business of said company, which he did; that all the money was furnished by the bank to the company and was used in its business; that Page or the Vicksburg Bank never furnished him any money, or took his receipts; that he acted as manager of the Vicksburg Manufacturing Company, and in no other capacity; that he accounted for everything which came into his hands, and is not indebted to the complainant or the company. Issue was joined and the case heard. A decree for an accounting was ordered, and later a final decree entered against defendant Bushnell for the sum of $3,308.45, from which he has appealed to this court.

The court, in the opinion directing the decree, held that defendant—

"Bushnell misrepresented the condition of his business at and about the end of the first year, and thereby misled the stockholders and directors of the Vicksburg Manufacturing Company and in effect worked a fraud upon them, and hence the legal situation created is that Bushnell is a debtor to complainant for the moneys furnished Bushnell, to wit, $4,061.87. What Bushnell may have used said money, or any part thereof, for, is of no consequence, and

he is obligated to pay the same back to the complainant as assignee."

The opinion then states:

"Bushnell will be charged with $4,061.87. He should then have credit for $980.72, leaving a balance of $3,081.-15. This latter sum will draw interest at 6 per cent. from March 4, 1905, to date. From this amount so obtained credit should be given for the property Bushnell left at the plant, to wit, $359.62, plus interest at 6 per cent. from March 4, 1904, to this date. The result so obtained establishes the amount I find said Bushnell owes the complainant and for which decree is hereby directed."

The two items of credit deducted by the court are the value of machinery installed by Bushnell, and the value of other property left by him, in the plant of the Vicksburg Manufacturing Company.

The contract between defendant Bushnell and Clark Bros. Company, out of which the main dispute in this case arises, being Exhibit B of the bill of complaint, reads as follows:

"This agreement, made and entered into this 4th day of March, 1904, between the Clark Brothers Company, a corporation organized and operating under the laws of the State of Michigan, of Vicksburg, Mich., party of the first part, and W. E. Bushnell of Kalamazoo, Mich., party of the second part, witnesseth, That the said parties agree to and with each other as follows, to wit:

"(1) That said party of the first part is the owner of a certain manufacturing plant situated in the village of Vicksburg in said county and State, together with certain letters patent covering certain regulators and low-water alarms, and, the party of the second part being a practical manufacturer, the said first party agrees to turn over its said plant for a term of one year to said second party free of rent, said second party to take charge of and manage said plant and manufacture low-water alarms and regulators together with certain railway supplies, which second party desires to manufacture and to manufacture such other products as the parties to this contract may agree upon from time to time.

"(2) The said party of the first part agrees to furnish

second party the sum of three thousand dollars, or such part thereof as second party shall require, as a working capital upon which to run said business, and to install additional machinery, and it is agreed that, as fast as any funds are received from the sale of products from this factory, whatever amount can be spared after payment of the running expenses of said plant shall be applied to the payment of said sum of three thousand dollars, or such part thereof as may be used by the second party, together with interest on said sum as may be so used at the rate of 6 per cent. per annum for such time as any part of the same shall remain unpaid, and it is further agreed that after the repayment to said first party of such sum of three thousand dollars, or such part of the same as may be used by the second party, together with the interest thereon as herein provided, that any profits arising from said business during the term of the first year under the operation of this contract shall become the property of the said W. E. Bushnell as a part compensation for his services.

" (3) The said party of the second part agrees that he will take charge of said plant and faithfully oversee and handle the same to the best possible advantage for the said term of one year, and that he will put in his time for said term of one year free of charge except for actual expenses incurred by him in traveling or selling goods for the benefit of said company, except, however, such compensation as may come to him under the provisions of the second subdivision of this contract.

" (4) It is further agreed between the parties that, if at the end of one year said second party shall have succeeded in placing said business upon a profitable basis, said first party will cause to be turned over and issued to said second party ten thousand dollars of the capital stock of said corporation free from all liens and incumbrances of every name and nature whatever, and if after said first year said second party shall have succeeded in placing said business on a profitable and paying basis, so that this agreement may be extended and carried out by first party transferring said stock to second party, then it is hereby agreed between the parties that the said Clark Brothers Company shall pay to the second party for the two years next following a reasonable salary based on the profits of the company as shown by the books of the company and to be agreed upon by the parties hereto not, however, to exceed the sum of one hundred dollars per month.

"(5) If at the end of one year said business shall have been placed on a paying basis, but the parties do not care to continue this contract in so far as it relates to the manufacture of regulators and low-water alarms, then, in that case, said W. E. Bushnell agrees that he will release and assign to the first party thereto all interest or claim that he may have in and to all letters patent which are owned by the parties hereto covering said feed regulators and low-water alarms; but, in case said second party shall not within one year succeed in placing said business on a paying and profitable basis, then this contract is to be terminated, and the said W. E. Bushnell shall have no claim against first party growing out of this contract either for labor, service, or money expended. Neither shall there be any liability on the part of said W. E. Bushnell on account of not having placed said business on a paying basis.

"(6) The said second party also agrees that, after one-half of the capital stock of said Clark Brothers Company has been turned over to him, the remaining stockholders may have authority and power to make such arrangements by pledge of its stock or otherwise as shall be necessary to secure to the Vicksburg Exchange Bank any balance that may be remaining due and unpaid on a certain mortgage given by said Clark Brothers Company to the said Vicksburg Exchange Bank; this provision being inserted in order that the provision of this contract relative to the turning over by the first party to second party one-half of the capital stock of said corporation free from all liens or debts it being intended that the stockholders of said corporation outside of the said W. E. Bushnell shall arrange for the payment of said mortgage indebtedness so as to relieve the stock and interest of said W. E. Bushnell from any liability under said mortgage indebtedness.

"In witness whereof the parties have hereunto set their hands and seals this 4th day of March, 1904.

"CHARLES H. McKAIN, President.
"CHARLES A. MORSE, Secretary.
"W. E. BUSHNELL."

The following is the agreement, Exhibit C of the bill of complaint, made between Elbert L. Page, president of the Vicksburg Exchange Bank, and the stockholders of the Vicksburg Manufacturing Company·

"This agreement, made and entered into by and between Elbert L. Page, as president of the Vicksburg Exchange Bank, party of the first part, and Joseph W. McIlvain, Elbert L. Page, Eugene C. Rishel, Charles S. Cooley, Charles F. Mohney, Charles A. Morse, Charles H. McKain, I. A. Mills, Charles Ross, Leland H. Sabin and William A. Wood, of the second part, witnesseth that the parties agree to and with each other as follows, to wit:

"Whereas, the said parties of the second part are stockholders in a certain corporation known as the Clark Brothers Company, and said Clark Brothers Company as such corporation are indebted to the said Vicksburg Exchange Bank in the sum of five thousand and five hundred dollars, part of which is secured by mortgage covering the property of said Clark Brothers Company and part of which is unsecured; and,

"Whereas, the said Clark Brothers Company have this day entered into a contract with one W. E. Bushnell of Kalamazoo, Mich., wherein and whereby the said Clark Brothers Company has agreed that at the end of one year from this date and under certain conditions that they, the said Clark Brothers Company, would cause to be assigned and turned over to the said W. E. Bushnell ten thousand dollars of the capital stock of the said Clark Brothers Company free and clear from all liens, debts and charges of every name and nature whatever:

"Now, therefore, for the purpose of placing said corporation in a position where it can carry out the provisions of said contract whenever it becomes necessary, we, the said parties of the second part, agree with the said first party, as follows:

"*First.* That we will within ten days from the date of this contract pay to the said first party an assessment upon our stock amounting to the sum of fifteen hundred dollars, the same to be paid in proportion to the amount of stock held by each, and, should any of the second parties hereto fail or refuse to pay their proportionate share of said sum, then the same shall be made up by the balance of said stockholders herein named as second parties so that said full sum of fifteen hundred dollars shall be raised and paid into said first party within the time herein limited.

"*Second.* That the said parties of the second part will within one year from the date hereof pay to the said first party a further sum of one thousand dollars on the in-

debtedness which said Clark Brothers Company may be owing to said first party, the same to be paid in the same way and under the same conditions as the fifteen hundred dollars hereinbefore mentioned, provided said contract with W. E. Bushnell shall be carried out and continued after the first year.

"*Third.* That the said second parties will, after the payment of the said sum of twenty-five hundred dollars as herein provided, and should the contract this day entered into between the said Clark Brothers Company and the said W. E. Bushnell be continued beyond one year as provided for in said contract, secure to the said first party herein mentioned by a pledge of their various amounts of stock the balance of any and all indebtedness which the said Clark Brothers Company may at that time be owing to said first party in order that said contract this day entered into may be carried out, by a transfer to said W. E. Bushnell of the amount of stock which said contract provides shall be transferred to him free of all liens or debts existing against said corporation, it being intended to secure to said Vicksburg Exchange Bank the payment of all indebtedness by a pledge of the stock of the second parties hereto in order that the mortgage and all other indebtedness may be released so far as the corporation known as the Clark Brothers Company is concerned.

"In witness whereof the parties hereto have hereunto set their hands and seals this 4th day of March, 1904.

"J. W. MCILVAIN.
"ELBERT L. PAGE.
"EUGENE C. RISHEL.
"CHARLES F. MOHNEY.
"CHARLES A. MORSE.
"CHARLES H. McKAIN.
"ELBERT L. PAGE, Pt. Vicksburg Exchange Bank."

The Bushnell contract was assigned to complainant March 28, 1907. Both of these contracts were assigned by Page to complainant April 16, 1907.

The Clark Brothers Company, owner of the plant mentioned in the above contract between it and the defendant Bushnell, had been running at a loss, to the amount at least of $5,500, and its manufactory had been closed down for several months at the time this contract

was made. The negotiations entered into between the parties were for the purpose of finding a way whereby this might be made a successful going concern. Defendant Bushnell was to make every effort to do this under this contract, and if it was not made a success within one year, the contract provides in terms that it is "to be terminated, and the said *W. E. Bushnell shall have no claim against the first party growing out of this contract either for labor, services or money expended. Neither shall there be any liability on the part of the said W. E. Bushnell on account of not having placed said business on a paying basis.*" Defendant Bushnell entered upon this enterprise under this contract and did take charge of and manage the plant in the name of the company, using for the purposes of the business the money furnished by it, under the terms of the contract, and so continued for about three years. There is evidence tending to show there was at the end of the first year some profit realized; but it appeared, when the business was closed, that there had been a loss of at least the amount of $3,000, for which recovery is sought in this suit, besides the bank overdraft of about $1,600, the amount involved in the suit at law brought by complainant against Bushnell. There is a claim made on the part of complainant that defendant Bushnell was guilty of fraud and fraudulent representations towards the stockholders and officers of the Vicksburg Manufacturing Company.

The entire evidence bearing upon the question of fraud and fraudulent representations made by Bushnell has been examined with care, and we are satisfied that the charge is not sustained. All of the money complainant claims he is entitled to recover from Bushnell, being the cash furnished him by the company under the contract of March 4, 1904, was furnished six months before any statement made by Bushnell which is claimed was false and fraudulent. Appreciating this fact, complainant in his reply brief has abandoned the accounting feature of the case. We quote:

"Complainant is scarcely seeking an accounting. He is simply seeking to have Bushnell pay back the $4,100 advanced him. This the contract provided he should pay back. The contract also provided Bushnell might install additional machinery. This he did, and proofs were taken to get at that and give him credit for it, which Bushnell is entitled to under the contract."

An interlocutory decree for an accounting was made by the court below, and testimony was taken; but in the final decree a general accounting was not considered, as already appears from the opinion quoted.

Complainant, as trustee in bankruptcy, must rest his claim for recovery upon the proposition that the relation of debtor and creditor existed between the defendant Bushnell and the banking firm, or circumstances which equity would recognize and declare equivalent to such relation. It will not require citation of authorities to show that otherwise no relief can be granted him. The assignments to complainant by Page and the Vicksburg Manufacturing Company, unless the relation above described existed, can be of no possible avail, even if free from the infirmities claimed to render them void.

When this money was obtained, Page was president of the banking firm, and also a large stockholder in the manufacturing company. He had full knowledge of the Bushnell contract of March 4, 1904, in which the company agreed to furnish $3,000 to carry out that contract. In order to make it possible for the company to furnish this money to carry out other agreements of the contract, he, as president of the banking firm, entered into the agreement with the stockholders of the company to reduce their then indebtedness to his banking firm, about $2,500. Bushnell was not a party to this agreement, or in any way privy thereto. This reduction was in effect accomplished, and Page began to borrow money from his firm on his own notes, and hand it to Bushnell, who, in writing, receipted to him for each amount received, "account of Vicksburg Manufacturing Company." These

receipts are Exhibits 103 to 115 inclusive, and cover the $4,100 it is claimed Bushnell received from the banking firm. These moneys were deposited by Bushnell in the Vicksburg Exchange Bank to the credit of the Vicksburg Manufacturing Company and checked against by checks drawn by Bushnell on such account, all signed "Vicksburg Manufacturing Company. W. E. Bushnell, Mgr." We find in this record a list of such checks amounting to $3,662; but by reason of the voluminous record, and the absence of an index of exhibits, as required by rule, no more time has been spent in tracing this bank account than to determine the above facts. From these undisputed facts the conclusion which we draw is that Page and his banking firm were dealing with the Vicksburg Manufacturing Company, that Page at no time was furnishing Bushnell money, but was himself the debtor of the bank, procuring money for the company, with full knowledge of all the facts, and as to how the money was banked and drawn against, and that Bushnell was not a debtor of the bank. Complainant, when the notes which Page gave to the bank for this money were included in the judgment, so understood these transactions.

It is, however, insisted that, as Page obtained this money when he was insolvent, complainant, having acquired the rights of the company, should be subrogated to all such rights, and recover from Bushnell money improperly paid out of the bank, and which the company could recover from him. Not passing upon the questions which might bear upon application of such a proposition to the case, it is sufficient to say that under this contract Bushnell in all his relations was carrying on the business of the Vicksburg Manufacturing Company in its name, and for its benefit, upon money furnished by it under the contract, by which provision was specifically made that in case of failure of the enterprise he assumed no liability. The Vicksburg Manufacturing Company had no claims or demands upon Bushnell for the money used by him. It will not be necessary to discuss the record further.

Complainant is not entitled to the relief granted.

The decree of the circuit court is reversed, and a decree will be entered in this court dismissing his bill of complaint, with costs to defendant Bushnell of both courts.

OSTRANDER, HOOKER, MOORE, and BROOKE, JJ., concurred.